**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Jointly Administered) |
| MOUNTAIN EXPRESS OIL COMPANY, MEX FUELS SW-LA LLC, MEX RE-SW-LA LLC, MEX RE-SE-MS LLC, AND MEX FUELS SE-MS LLC *et al.*,<br>          Plaintiffs,<br><br>    v.<br><br>GSS HOLDINGS LA LLC, GSS HOLDINGS LLC, GSS HOLDINGS 1 LLC, AND SUKHRANJAN SINGH MULTANI<br>          Defendants. | Adv. Case No. [_____] |

**DEBTORS' ADVERSARY COMPLAINT**

The debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned cases, hereby file this Complaint against GSS Holdings LA LLC, GSS Holdings LLC, GSS Holdings 1 LLC, and Sukhranjan Singh Multani (all together, "**Defendants**") for pre- and post-petition breaches by the Defendants of fuel supply agreements and lease agreements critical to the Debtors' businesses and the successful administration of the Debtors' bankruptcy cases.  In support of this Complaint, the Debtors respectfully state as follows:

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

1

**NATURE OF ACTION**

1.       The Defendants are operators of 40 convenience stores and travel centers located in Louisiana and Mississippi leased to them by the Debtors. Pursuant to several supply agreements entered between the Debtors and the Defendants, the Debtors are the exclusive suppliers for the fuel retailed at the leased stores.

2.       After the Debtors commenced their bankruptcy cases, the Debtors became aware that the Defendants were materially breaching their agreements with the Debtors. The Debtors gave notice to the Defendants that they were failing to timely remit the monthly rent owed the Debtors under the leases. The Debtors provided additional post-petition notice to the Defendants that they were breaching the supply agreements for, among other things, failing to timely pay the Debtor for wholesale fuel purchases and to timely remit proceeds from commissioned sales of the Debtor's fuel.

3.       After these defaults, the Debtors and their professionals invested significant time and attention negotiating with the Defendants and their counsel for their compliance with the supply agreements and leases. During these negotiations Defendants requested and received significant concessions from the Debtors. Unfortunately, even after being granted these concessions, the Defendants committed further and additional breaches, which necessitated this proceeding for termination of the agreements and damages.

4.       Debtors seek every dollar due to the Debtors whether in the form of liquidated or actual damages, fees, or costs. Merely accounting for accelerated rent due under one of the parties' leases, Debtors are owed not less than $127,195,501.32.

**JURISDICTION**

5.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein include sections 327 and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the local rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

8.      Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Debtors consent to the entry of final orders or judgment by the Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### DEFENDANTS[2]

9.      GSS HOLDINGS LA LLC ("**GSS LA**"), a Louisiana limited liability company, is, along with its member, Sukhranjan Singh Multani, a party to a "Commercial Lease" dated as effective, February 15, 2023 (as subsequently amended by the parties pursuant to the LA Lease Amend. and the LA Lease 2nd Amend., the "**LA Lease**"), pursuant to which GSS LA agreed to lease from Debtor MEX RE-SW-LA LLC, Mountain Express Stores #3066A, #3069A, #3074A, #3075A, #3080A,[3] #3077A, #3078A, #3079A, #3082A, #3094A, #3098A, #3099A, #4062, #4063, #4064, #4065, #4067, #4068, #4070, #4071, #4072, #4073, #4076, #4081, #4083, #4084, #4085, #4086, #4087, #4088, #4089, #4090, #4091, #4092, #4093, #4095, #4097, and #4111 (the "**LA Stores**"). GSS LA and Mr. Multani further agreed, pursuant to a "Fuel Supply Agreement" dated as effective, February 15, 2023 (as subsequently amended by the parties pursuant to the LA

---

[2] A table summarizing the information in this Part is available in Appendix A.
[3] Prior to being converted to a wholesale Store, Store #3080A was identified in certain Agreements as Store #4080.

3

Wholesale FSA Amend., the "**LA Wholesale FSA**"), and entered with Debtor MEX Fuels SW-LA LLC, to exclusively purchase fuel on a wholesale basis from the Debtors for Mountain Express Stores #3069A, #3074A, #3075A, #3077A,[4] #3078A, #3079A, #3082A, #3094A, #3098A, and #3099A[5] (the "**LA Wholesale Stores**") for the purpose of GSS LA operating fuel retail businesses at the LA Wholesale Stores. GSS LA and Mr. Multani further agreed, pursuant to a "Fuel Supply Agreement" dated as effective, February 15, 2023 (as subsequently amended by the LA Commission FSA Amend., the "**LA Commission FSA**"), and entered with Debtor MEX Fuels SW-LA LLC, to exclusively purchase fuel on a commission basis from the Debtors for Mountain Express Stores #4062, #4063, #4064, #4065, #4067, #4068, #4070, #4071, #4072, #4073, #4076, #4081, #4083, #4084, #4085, #4086, #4087, #4088, #4089, #4090, #4091, #4092, #4093, #4095, #4097, and #4111 (the "**LA Commission Stores**") for the purpose of GSS LA operating fuel retail businesses at the LA Commission Stores.

10.     The LA Lease was subsequently amended by the parties pursuant to the "First Amendment of Commercial Lease" dated as executed April 7, 2023 (the "**LA Lease Amend.**,) and the "Second Amendment of Commercial Lease" dated as executed April 7, 2023 (the "**LA Lease 2nd Amend.**").

11.     The LA Wholesale FSA was subsequently amended by the parties pursuant to the "First Amendment of Fuel Supply Agreement" dated as executed March 6, 2023 (the "**LA Wholesale FSA Amend.**). The LA Commission FSA was subsequently amended by the parties pursuant to the "First Amendment of Fuel Supply Agreement" dated as executed March 6, 2023 (the "**LA Commission FSA Amend.**).

---

[4] This Store does not have fuel pumps installed.
[5] This Store does not have fuel pumps installed.

12.     GSS Holdings LLC ("**GSS MS**"), a Mississippi limited liability company, is, along with its member, Mr. Multani, a party to a "Commercial Lease" dated as effective, September 28, 2022 ("**206 Lease**") and entered with MEX RE-SE-MS LLC, and a "Fuel Supply Agreement," dated as effective September 28, 2022 ("**206 FSA**"), and entered with MEX Fuels SE-MS LLC, pursuant to which GSS MS agreed, respectively, to lease Mountain Express Store #206, and to exclusively purchase fuel on a wholesale basis from the Debtors, for the purpose of GSS MS operating a fuel retail business at Store #206.

13.     GSS Holdings 1 LLC ("**GSS MS1**"), a Mississippi limited liability company, is, along with its member, Mr. Multani, a party to a "Commercial Lease" dated as effective, September 28, 2022 ("**207 Lease**"), and entered with MEX RE-SE-MS LLC, and a "Fuel Supply Agreement," dated as effective September 28, 2022 ("**207 FSA**"), and entered with MEX Fuels SE-MS LLC,  pursuant to which GSS MS1 agreed, respectively, to lease Mountain Express Store #207, and to exclusively purchase fuel on a wholesale basis from the Debtors, for the purpose of GSS MS operating a fuel retail business at Store #207.

14.     Herein, the LA Lease, LA Wholesale FSA, LA Commission FSA, 206 Lease, 206 FSA, 207 Lease, and the 207 FSA are collectively referred to as the "**Agreements**."

15.      Suhkranjan Singh Multani is a member and manager of GSS LA, GSS MS, and GSS MS1, and an individual party to the Agreements, residing in the State of Louisiana, and having a mailing address of 11398 Wellington Lane, Hammond, Louisiana 70403.

## BACKGROUND

16.     Based in Alpharetta, Georgia, the Debtors are a vertically-integrated market leader in the fuel supply business. The Debtors' business includes leasing fueling centers and associated convenience stores ("**Fueling Centers**") and travel centers ("**Travel Centers**") from landlords and distributing fuel purchased from major fuel suppliers to retail pump sites where consumers can

purchase fuel from vendors via credit card machines. The Debtors' operations depend upon the Debtors entering into fuel purchase contracts with stringent minimum purchasing requirements with the major fuel suppliers (the "**Fuel Suppliers**") and long-term agreements with dealers (such as the Defendants) to supply the dealers with fuel.

17.     Certain of the Fueling Centers and Travel Centers are operated by the Debtors, while others are "dealered out," meaning the sites are subleased to third parties and operated by those third parties.[6]

### a.     The Debtors Lease Stores to the Defendants

18.     The Debtors and the Defendants are parties to leases—the LA Lease, 206 Lease, and 207 Lease (all together, the "**Leases**" and each a "**Lease**")—pursuant to which the Defendants agreed to lease certain Fueling Centers and/or Travel Centers from the Debtors in exchange for rent and other consideration for a specified term. A list of the Fueling Centers and/or Travel Centers leased to the Defendants (each a "**Store**" and all together, the "**Stores**") is provided in the attached and incorporated **Appendix A**.  Rent is owed by the Defendants to the Debtors on a monthly basis. The Defendants agreed that they would transfer any amounts due to the Debtors under the Leases by Automated Clearing House Debit ("**ACH**") initiated by Debtors from accounts maintained by the Defendants. A summary schedule (the "**Rent Schedule**") of the Defendants' base rent obligations under the LA Lease is included in the attached and incorporated **Appendix B**.

19.     The Leases obligate the Defendants to pay a specified base rent amount via ACH on the first day of each month of the term of the Lease, in addition to any specified yearly and monthly administrative and environmental fees and insurance and tax costs. The LA Lease further

---

[6] See Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief (D.I. 57) at page 6.

requires monthly payment of a "Percentage Rent" of 1% of gross sales receipts for specified Stores. LA Lease § 3.2.

20.     Per its section 2, the term of the 206 Lease begins on October 1, 2022 and ends on October 1, 2032. Per its section 2, the term of the 207 Lease begins on October 1, 2022 and ends on October 1, 2032. Per its section 2, the term of the LA Lease ends on April 1, 2033.

21.     Default by a Defendant under a Lease entitles the Debtors to numerous remedies, including termination of the Lease. *See* LA Lease § 17, 206 Lease § 16, 207 Lease § 207.  The Debtors and the Defendants agreed that early termination of a Lease shall not affect the Debtors' right to collect unpaid rent for the entire term of the Lease. LA Lease § 17, 206 Lease § 16, 207 Lease § 16.

**b.      The Defendants Agree to Exclusively Purchase Motor Fuels from the Debtors for the Leased Stores**

22.     The Leases were entered between the parties primarily for the purpose of the Defendants operating fuel retail businesses at specified Stores. Consistent with this purpose, the parties also entered into fuel agreements, the LA Wholesale FSA, LA Commission FSA, 206 FSA, and the 207 FSA (all together, the "**FSAs**" and each an "**FSA**"), pursuant to which the parties agreed that the Defendants would <u>exclusively</u> purchase fuel from the Debtors to retail at the Stores.

23.     The LA Wholesale FSA, the 206 FSA, and the 207 FSA (all together, the "**Wholesale FSAs**") in section 2(b) require the Defendants to purchase a minimum number of gallons of petroleum products per month ("**Minimum Purchase Amount**").

24.     Per section 1, the term of each FSA is approximately ten years. The term of the LA Wholesale FSA ends on April 1, 2033. The term of the 206 FSA begins on October 1, 2022 and ends on October 1, 2032. The term of the 207 FSA begins on October 1, 2022 and ends on October 1, 2032.

25. Each FSA is to be governed under Georgia law pursuant to a choice of law clause contained therein.

26. In the event of a breach of the parties' exclusive fuel sale agreements, the parties agree that Debtors shall have the right to injunctive relief in the form of a restraining order against Defendant preventing any other fuel supplier from supplying fuel at the location for the term of this Agreement.

27. The FSAs grant the Debtors the right to designate branding of motor fuels to be purchased or sold by the Defendants (e.g., ExxonMobil, Shell, Sunoco, and Valero). Under the FSAs, the initial cost of changing or installing branding at a Store is borne by the Debtors ("**Branding Investment**").

28. In the Wholesale FSAs, the price for motor fuels is calculable from a formula agreed to by the parties in the Wholesale FSAs' section 5. The terms of payment are provided in the FSAs' section 6, which states that "[m]otor fuel sales shall be net payment, COD [cash on delivery], at time of delivery." The Wholesale FSAs also permit the Debtors to, at their discretion, provide credit terms for payment, but these credit terms may be reverted to the default COD terms by the Debtors unilaterally giving notice to the Defendants. The Wholesale FSAs state the Defendants must provide banking information necessary for electronic fund transfers ("**ECF**") to pay for fuel deliveries. A return of an ECF is a default by Defendants, and Defendants are subject to an administrative charge for each such dishonored instrument or transfer.

29. The LA Commission Stores, pursuant to the LA Commission FSA, exclusively sell fuel for the Debtors and receive a commission of a specified percentage price of the fuel sold, akin to a consignee. In section 6, the LA Commission FSA requires GSS LA and Mr. Multani to provide the Debtors with reports, every day, of sales of motor fuels sold the day prior and validated deposit

slips for the prior day's fuel sales. This contractual obligation is generally performed automatically via equipment installed at the Debtor's stores ("**Blackboxes**"), which record and transmit sales and inventory data to the Debtors. The Debtors use the sales data obtained from the Blackboxes to settle their accounts with dealers retailing fuel on a commission on a daily basis. The Debtors draft or remit funds to GSS LA's designated accounts depending on whether funds are owed to or by the Debtor after accounting for fuel transfers, the payment of commission fees, and the assessment of any sums due under the parties' agreements. In other words, the LA Commission FSA contemplates the balance between the Debtors and GSS LA and Mr. Multani being "zeroed" daily.

30.     Where a balance is due to the Debtors under the LA Commission FSA and an ACH draft initiated by the Debtors fails, this constitutes a default under the LA Commission FSA. GSS LA and Mr. Multani's duties under the LA Commission FSA to remit fuel proceeds from commission sales is absolute and unmistakable. The LA Commission FSA states, "Dealer expressly acknowledges that converting Supplier's fuel into retained cash by failing to make daily deposits as required herein is considered by Supplier as constituting theft. Dealer agrees that such conversion, no matter how made or by whom, shall be the responsibility of Dealer and Dealer agrees to promptly reimburse Supplier for any loss from such conversion." LA Commission FSA § 6.

31.     All of the FSAs, in section 7, require the Defendants to exclusively use a credit card network ("**CC Network**") provided by the Debtors to conduct retail purchases:

> In the event of the unauthorized use of a credit card network or machine for processing sales at the Location, by Dealer or any of its Dealers or employees or contractors, Dealer shall be in default in its obligations under this Agreement. In the event of any such default, the cure for the unauthorized activity (in addition the discontinuance of such unauthorized activity), Dealer shall pay unto Supplier a five hundred dollar ($500) cure fee for the first such default; and a one thousand dollar ($1,000) cure fee for any subsequent default during the Term hereof. In the event

of default by Dealer under any other terms of this Agreement, Supplier shall also be entitled to immediately disable said credit card network at the Location.

32. The FSAs require, in section 16, that the Defendants furnish scheduled security deposits ("**Security Deposits**") for each Store, typically in the amount of $40,000. Per the Wholesale FSAs, the Security Deposits are to be partially collected through the CC Network at a rate of two cents per gallon of fuel retailed at each Store. The FSAs, in section 7(b), further provide:

Invoices from credit card sales shall be credited and paid to Supplier in regard to approved credit card purchases from Dealer. Supplier shall credit Dealer's account for products purchased hereunder, for the amount of credit card sales credited and paid to Supplier in accordance with fuel jobber (wholesaler) industry standards; provided, however that credit cards sales shall not be immediately repaid to Dealer but held on Dealer's account as additional credit against fuel purchases. Upon any failure by Dealer to strictly comply with the terms and conditions of credit card transactions at the Location, Supplier shall have the right to charge-back to the Dealer all sums not credited to or paid to Supplier as a result of defective or noncomplying credit card sales at the Location. Any "charge-backs" shall be immediately paid by Dealer to Supplier. Dealer shall be responsible for all point-of-sale programming, updates and installation and maintenance costs for EMV requirements from governmental agencies or oil companies.

33. The FSAs further identify numerous additional acts or omissions that may constitute a breach or default in section 19, including the violation of the terms of any Lease entered between the parties and:

(a) failure to remit to Supplier any monies owed by Dealer to Supplier in accordance with the provisions of this agreement; [and]

(d) failure of a mystery shopper inspection or other inspection at the Location and denying Supplier's implementation of a monthly maintenance program at the Location by a vendor to be selected by Supplier in its sole and absolute discretion[.]

34. The FSAs contain a cross-default clause in section 21 providing the default on an FSA shall also be a default on all other agreements between the same parties, inclusive of the FSAs and Leases.

35. Section 19 of the Wholesale FSAs also specifies the numerous consequences of default. Among other remedies, "in the event Dealer fails to remit Supplier any monies owed to

10

Supplier under the terms hereunder, Supplier shall have the right to immediately suspend motor fuel delivery until and unless such breach is cured." Section 19 also authorizes the Debtors to send a notice of default and demand cure within a specified number of days or have the FSAs terminated at the Debtors' discretion.

36. The FSAs also provide that in the events of default and termination, the Debtors may recoup, as stipulated damages, their Branding Investment and the cost of "debranding" the Stores, inclusive of the costs to remove all brand signage and brand color scheme and repayment of any unamortized oil company branding costs and rebates at the Stores.

37. Additionally, the Defendants and the Debtors stipulated to liquidated damages ("**Liquidated Fuel Damages**") in the event of termination caused by Defendants' default:

> [T]he parties agree that, in addition to any other amounts owed to Supplier hereunder, Dealer shall pay to Supplier as liquidated damages and not as a penalty a sum equal to FIVE CENTS ($0.05) times the minimum number of gallons required to be purchased monthly as contained herein times the number of months remaining in the Term of this Agreement from the date of default. The parties further agree that the above formula is reasonable because the amount of such liquidated damages are decreased by each month that Dealer performs its obligations under this Agreement.

38. Separate and apart from the Liquidated Fuel Damages, the FSAs also entitle the Debtors to seek attorney's fees, costs, and interest:

> In the event it becomes necessary for Supplier to employ the services of its attorney to enforce any aspect of this Agreement, whether Dealer is in default of this Agreement or this Agreement is amended, assigned, or modified, Supplier shall be entitled to charge and collect administrative costs and legal fees in an amount not less than $2,000.00. In the event that either party files litigation regarding this Agreement, the losing party agrees to pay the prevailing party fifteen percent (15%) of the amount of damages for attorney's fees and costs of litigation.

**c.      The Defendants Breach the FSAs and the Leases**

39. Following the Petition Date, the Defendants breached their payment obligations under the Leases. On May 4, 2023, the Debtors gave notice ("**First Default Notice**") to the

11

Defendants that they were in default of section 3 under the Leases for non-payment of rent in an amount totaling $1,036,741.43 and section 4.5 of the LA Lease for returned ACH drafts for the payment of inventory at eleven Stores in an amount totaling $430,157.95. Additionally, the Debtors gave notice that Defendants were overpaid for concessions in the amount of $216,666.00.

40.     On May 5, the Debtors gave a second notice ("**Second Default Notice**") to the Defendants that any failure to remit proceeds from sales of fuel to be sold on commission would be considered theft by conversion pursuant to the language of the LA Commission FSA and would constitute a violation of the automatic stay, 11 U.S.C. § 362. The Second Default Notice notified defendants that pursuant to the FSAs, they would be assessed a legal and administrative fee in the amount of $2,000 per Store, an amount totaling $80,000.00.

41.     The Debtors have worked in good faith with Defendants' to reach a resolution of the parties' dispute and to bring the Defendants into compliance with the FSAs and the Leases. However, even after granting the Defendants significant concessions, the Defendants have committed further breaches of the FSAs and Leases, necessitating the relief sought in the Complaint.

42.     In addition to any other default notices received by the Defendants from the Debtors, or its agents, this Complaint shall serve as a notice of default under each Lease and FSA.

43.     As a consequence of breaches by Defendants of the Agreements, the Debtors are entitled to termination of the LA Wholesale FSA, effective five, ten, or fifteen days from notice of the first default, which was not timely cured. The Agreements are terminated no later than the date of filing of this Complaint.

## COUNTS

I.      **Count I: Breaches of Contract Under the LA Wholesale FSA by GSS LA and Mr. Multani, Liquidated or Actual Damages**

44.     Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

45.     GSS LA and Mr. Multani breached the LA Wholesale FSA by failing to remit payment for fuel purchased, stopping ACH drafts for fuel purchases or causing ECF failures, and violating the terms and conditions of the parties' Leases.

46.     Pursuant to section 19 of the LA Wholesale FSA, the defaults by GSS LA and/or Mr. Multani entitles Debtors to Liquidated Fuel Damages.

47.     Pursuant to section 19 of the LA Wholesale FSA, the defaults by GSS LA and/or Mr. Multani further entitles Debtors to its costs for debranding the Stores and to recoup its Branding Investment, inclusive of repayment of any unamortized oil company branding costs and rebates for the Stores, as a separate form of liquidated damages.

48.     In the event the LA Wholesale FSA's liquidated damages clauses are found to be unenforceable, the Debtors seek, in the alternative, all actual damages resulting from the breaches.

II.     **Count II: Breaches of Contract Under the 206 FSA, Liquidated or Actual Damages**

49.     Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

50.     GSS MS and Mr. Multani breached the 206 FSA by: failing to remit payment for fuel purchased, stopping ACH drafts for fuel purchases or causing ECF failures, and violating the terms and conditions of the parties' Leases.

51.     Pursuant to section 19 of the 206 FSA, the defaults by GSS MS and/or Mr. Multani entitles Debtors to Liquidated Fuel Damages.

52.     Pursuant to section 19 of the 206 FSA, the default by GSS MS and/or Mr. Multani further entitles Debtors to its costs for debranding the Stores and to recoup its Branding Investment, inclusive of repayment of any unamortized oil company branding costs and rebates for the Stores, as a separate form of liquidated damages.

53.     In the event the 206 FSA's liquidated damages clauses are found to be unenforceable, the Debtors seek, in the alternative, all actual damages resulting from the breaches.

### III.     Count III: Breaches of Contract Under the 207 FSA, Liquidated or Actual Damages

54.     Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

55.     GSS MS1 and Mr. Multani breached the 207 FSA by: failing to remit payment for fuel purchased, stopping ACH drafts for fuel purchases or causing ECF failures, and violating the terms and conditions of the parties' Leases.

56.     Pursuant to section 19 of the 207 FSA, the defaults by GSS MS1 and/or Mr. Multani entitles Debtors to Liquidated Fuel Damages.

57.     Pursuant to section 19 of the 207 FSA, the default by GSS MS1 and/or Mr. Multani further entitles Debtors to its costs for debranding the Stores and to recoup its Branding Investment, inclusive of repayment of any unamortized oil company branding costs and rebates for the Stores, as a separate form of liquidated damages.

58.     In the event the 207 FSA's liquidated damages clauses are found to be unenforceable, the Debtors seek, in the alternative, all actual damages resulting from the breaches.

### IV.     Count IV: Breaches of Contract Under the  LA Commission FSA, Liquidated or Actual Damages

59.     Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

60.     GSS LA and Mr. Multani breached the LA Commission FSA by failing to remit proceeds of the Debtor's fuel to be sold on commission, stopping ACH drafts for fuel purchases or causing ECF failures, and violating the terms and conditions of the parties' Leases.

61.     Pursuant to section 19 of the LA Commission FSA, the defaults by GSS LA and/or Mr. Multani entitles Debtors to Liquidated Fuel Damages.

62.     Pursuant to section 19 of the LA Commission FSA, the defaults by GSS LA and/or Mr. Multani further entitles Debtors to its costs for debranding the Stores and to recoup its Branding Investment, inclusive of repayment of any unamortized oil company branding costs and rebates for the Stores, as a separate form of liquidated damages.

63.     In the event the LA Commission FSA's liquidated damages clauses are found to be unenforceable, the Debtors seek, in the alternative, all actual damages resulting from the breaches.

**V.      Count V: Breaches of Contract Under the LA Lease, Liquidated or Actual Damages**

64.     Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

65.     GSS LA and Mr. Multani breached the 209-13 Lease by:

    (1)     Stopping ACH drafts for rent or causing ECF failures;

    (2)     Failing to remit rent and fees owed to Debtors in accordance with the provisions of the Lease;

    (3)     Ceasing or abandoning business operations at Stores; and

    (4)     Violating the terms and conditions of the parties' FSAs.

66.     Due to the breaches of the LA Lease, the Debtors are entitled to, among other remedies, terminate the LA Lease. Pursuant to the LA Lease, the Debtors are further entitled to all unpaid rent for the entire term of the LA Lease, as set forth in Appendix B.

**VI.    Count VI: Breaches of Contract Under the 206 Lease, Liquidated or Actual Damages**

67.    Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

68.    GSS MS and Mr. Multani breached the 206  Lease by:

    (1)    Stopping ACH drafts for rent or causing ECF failures;

    (2)    Failing to remit rent and fees owed to Debtors in accordance with the provisions of the Lease; and

    (3)    Violating the terms and conditions of the parties' FSAs.

69.    Due to the breaches of the 206 Lease, the Debtors are entitled to, among other remedies, terminate the 206 Lease. The Debtors are further entitled to all unpaid rent for the entire term of the 206 Lease.

**VII.    Count VII: Breaches of Contract Under the 207 Lease, Liquidated or Actual Damages**

70.    Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

71.    GSS MS1 and Mr. Multani breached the 207 Lease by:

    (1)    Stopping ACH drafts for rent or causing ECF failures;

    (2)    Failing to remit rent and fees owed to Debtors in accordance with the provisions of the Lease; and

    (3)    Violating the terms and conditions of the parties' FSAs.

72.    Due to the breaches of the 207 Lease, the Debtors are entitled to, among other remedies, terminate the 207 Lease. The Debtors are further entitled to all unpaid rent for the entire term of the 207 Lease.

## VIII.   Count IX: Attorney's Fees

73.   Debtors incorporate by reference the allegations in all preceding paragraphs as if set forth fully herein.

74.   The Agreements authorize the recovery of attorney's fees and litigation costs and expenses, stipulated under the Agreements to be in the amount of 15% of the prevailing parties' judgment for damages.

75.   All conditions precedent with respect to attorney's fees have been performed—Debtors are entitled to recover their attorney's fees and costs as provided under the parties' Agreements.

**WHEREFORE**, the Debtors respectfully request that the Court grant the following relief in their favor:

A.   Judgment against Defendants GSS Holdings LA LLC and Sukhranjan Singh Multani for breach of the LA Wholesale FSA under Count I.

B.   Judgment against Defendants GSS MS LLC and Sukhranjan Singh Multani for breach of the 206 FSA under Count II.

C.   Judgment against Defendants GSS MS1 LLC and Sukhranjan Singh Multani for breach of the 207 FSA under Count III.

D.   Judgment against Defendants GSS Holdings LA LLC and Sukhranjan Singh Multani for breach of the LA Commission FSA under Count IV.

E.   Judgment against Defendants GSS Holdings LA LLC and Sukhranjan Singh Multani for breach of the LA Lease under Count V.

F.   Judgment against Defendants GSS MS LLC and Sukhranjan Singh Multani for breach of the 206 Lease under Count VI.

17

G. Judgment against Defendants GSS MS1 LLC and Sukhranjan Singh Multani for breach of the 207 Lease under Count VII.

H. An award of monetary damages, in the amount stipulated to by the parties as liquidated damages, as set forth in Counts I-VII.

I. An award of monetary damages, consisting of actual damages to be determined at trial, as set forth in Counts I-VII, to the extent a relevant stipulated damages clause is not enforceable.

J. An award for Debtors' stipulated (and/or otherwise reasonable) attorney's fees and litigation costs and expenses.

K. An award for pre- and post-judgment interest on the monetary damages awarded under Counts I-VIII as provided by law; and

L. Such other and further legal and equitable relief as may be just and proper.

*Respectfully submitted,*

Dated: <u>June 21, 2023</u>

New Orleans, LA

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**

*/s/ Benjamin W. Kadden*

Benjamin W. Kadden (TX  24077542)
Coleman L. Torrans (*Pro Hac Vice* Pending)
601 Poydras St., 27th Floor
New Orleans, LA
(t) 504.568.1990
(f) 504.310.9195
bkadden@lawla.com
ctorrans@lawla.com

***Special Litigation Counsel to the Debtors and Debtors in Possession***

18

## APPENDIX A

### Stores

| | MEX No. | Dsg. | Address | Operator-Dealer 1 | Operator-Dealer 2 | Lease | FSA |
|---|---|---|---|---|---|---|---|
| 1 | 206 | | 12515 Three River Road, Gulfport, Mississippi 39503 | GSS HOLDINGS LLC | SUKHRANJAN MULTANI | 206 Lease | 206 FSA |
| 2 | 207 | | 24281 MS 53, Saucier, Mississippi 39574 | GSS HOLDINGS 1 LLC | SUKHRANJAN MULTANI | 207 Lease | 207 FSA |
| 3 | 3066 | A | 1675 Gause Blvd, Slidell, LA 70458 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 4 | 3069 | A | 2850 Belle Chasse Hwy, Gretna, LA 70056 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 5 | 3074 | A | 4101 S Claiborne, New Orleans, LA 70125 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 6 | 3075 | A | 4115 Airline Dr., Metairie, LA 70001 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 7 | 3077 | A | 4520 Jefferson Hwy, Metairie, LA 70121 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA* |
| 8 | 3078 | A | 4662 General Degaulle Dr., New Orleans, LA 70131 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 9 | 3079 | A | 468 Lapalco Blvd, Gretna, LA 70056 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 10 | 3080 | A | 4940 Groom Road, Baker, LA 70714 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA** |
| 11 | 3082 | A | 5310 Flannery Rd., Baton Rouge, LA 70814 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 12 | 3094 | A | 2901 Hwy 90, Avondale (Westwego), LA 70094 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |
| 13 | 3098 | A | 300 Lee Drive, Baton Rouge, LA 70808 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14 | 3099 | A | 2000 Earhart Blvd. Ste. A, New Orleans, LA 70113 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Wholesale FSA* |
| 15 | 4062 | | 1200 Westbank Expressway, Westwego, LA 70094 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 16 | 4063 | | 123 Terry Pkwy, Terrytown, LA 70056 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 17 | 4064 | | 1308 Jefferson Davis, New Orleans, LA 70125 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 18 | 4065 | | 13289 Old Hammond Hwy, Baton Rouge, LA 70816 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 19 | 4067 | | 1926 Newton St, New Orleans, LA 70114 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 20 | 4068 | | 2601 General DeGaulle Drive, New Orleans, LA 70114 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 21 | 4070 | | 2900 Hwy 90, Avondale, LA 70094 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 22 | 4071 | | 3049 Loyola Dr, Kenner, LA 70065 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 23 | 4072 | | 3441 Manhattan Blvd, Harvey, LA 70058 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 24 | 4073 | | 3622 General Degaulle, New Orleans, LA 70114 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 25 | 4076 | | 4408 S I-10 Service Rd W, Metairie, LA 70001 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 26 | 4081 | | 502 Terry Pkwy, Terrytown, LA 70056 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 27 | 4083 | | 5701 Crowder Blvd, New Orleans, LA 70127 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 28 | 4084 | | 798 Jean Lafitte Blvd, Lafitte, LA 70067 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 29 | 4085 | | 8692 River Rd, Westwego, LA 70094 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |

| | | | | | | |
|---|---|---|---|---|---|---|
| 30 | 4086 | | 9000 Westbank Expressway, Woodville, LA 70094 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 31 | 4087 | | 9410 Greenwell Springs, Baton Rouge, LA 70814 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 32 | 4088 | | 2698 Barataria Blvd., Marrero, LA 70072 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 33 | 4089 | | 1600 Manhattan Blvd, Harvey, LA 70058 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 34 | 4090 | | 1227 Veterans Blvd, Kenner, LA 70062 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 35 | 4091 | | 3528 S I-10 Service Rd W, Metairie, LA 70001 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 36 | 4092 | | 1944 Belle Chase Hwy, Gretna, LA 70056 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 37 | 4093 | | 3659 Lapalco Blvd, Harvey, LA 70058 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 38 | 4095 | | 2000 Carol Sue Ave, Gretna, LA 70056 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 39 | 4097 | | 2701 Canal Street, New Orleans, LA 70199 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |
| 40 | 4111 | | 1000 Franklin Blvd, Gretna, LA 70053 | GSS HOLDINGS LA LLC | SUKHRANJAN MULTANI | LA Lease | LA Commission FSA |

\* Fuel pumps not installed at Store.

\*\*Effective as of March 6, 2023, Store #4080, located at 3940 Groom Road, Baker, LA 70714, was redesignated Store #3080A, pursuant to First Amendment to Fuel Supply Agreement.

**APPENDIX B**

**LA Lease Rent Schedule[7]**

**Annual Base Rate Increase**      **2%**

| Store # | B. Rent as of '23 | B. Rent as of '24 | B. Rent as of '25 | B. Rent as of '26 | B. Rent as of '27 | B. Rent as of '28 | B. Rent as of '29 | B. Rent as of '30 | B. Rent as of '31 | B. Rent as of '32 |
|---|---|---|---|---|---|---|---|---|---|---|
| 3066A | $12,479 | $12,729 | $12,983 | $13,243 | $13,508 | $13,778 | $14,053 | $14,334 | $14,621 | $14,914 |
| 3069A | $8,003 | $8,163 | $8,326 | $8,493 | $8,663 | $8,836 | $9,013 | $9,193 | $9,377 | $9,564 |
| 3074A | $20,491 | $20,901 | $21,319 | $21,745 | $22,180 | $22,624 | $23,076 | $23,538 | $24,008 | $24,489 |
| 3075A | $13,221 | $13,485 | $13,755 | $14,030 | $14,311 | $14,597 | $14,889 | $15,187 | $15,491 | $15,800 |
| 3077A | $11,228 | $11,453 | $11,682 | $11,915 | $12,154 | $12,397 | $12,645 | $12,897 | $13,155 | $13,418 |
| 3078A | $3,772 | $3,847 | $3,924 | $4,003 | $4,083 | $4,165 | $4,248 | $4,333 | $4,419 | $4,508 |
| 3079A | $7,253 | $7,398 | $7,546 | $7,697 | $7,851 | $8,008 | $8,168 | $8,331 | $8,498 | $8,668 |
| 3082A | $25,123 | $25,625 | $26,138 | $26,661 | $27,194 | $27,738 | $28,293 | $28,858 | $29,436 | $30,024 |
| 3094A | $14,376 | $14,664 | $14,957 | $15,256 | $15,561 | $15,872 | $16,190 | $16,514 | $16,844 | $17,181 |
| 3098A | $26,158 | $26,681 | $27,215 | $27,759 | $28,314 | $28,881 | $29,458 | $30,047 | $30,648 | $31,261 |
| 3099A | $43,542 | $44,413 | $45,301 | $46,207 | $47,131 | $48,074 | $49,035 | $50,016 | $51,016 | $52,037 |
| 4062 | $43,704 | $44,578 | $45,470 | $46,379 | $47,307 | $48,253 | $49,218 | $50,202 | $51,206 | $52,230 |
| 4063 | $14,214 | $14,498 | $14,788 | $15,084 | $15,386 | $15,693 | $16,007 | $16,327 | $16,654 | $16,987 |
| 4067 | $49,143 | $50,126 | $51,128 | $52,151 | $53,194 | $54,258 | $55,343 | $56,450 | $57,579 | $58,730 |
| 4071 | $19,900 | $20,298 | $20,704 | $21,118 | $21,540 | $21,971 | $22,411 | $22,859 | $23,316 | $23,782 |
| 4073 | $26,129 | $26,652 | $27,185 | $27,728 | $28,283 | $28,849 | $29,425 | $30,014 | $30,614 | $31,227 |
| 4076 | $1,250 | $1,275 | $1,301 | $1,327 | $1,353 | $1,380 | $1,408 | $1,436 | $1,465 | $1,494 |
| 3080A | $13,900 | $14,178 | $14,462 | $14,751 | $15,046 | $15,347 | $15,654 | $15,967 | $16,286 | $16,612 |
| 4081 | $14,251 | $14,536 | $14,827 | $15,123 | $15,426 | $15,734 | $16,049 | $16,370 | $16,697 | $17,031 |
| 4083 | $37,141 | $37,884 | $38,641 | $39,414 | $40,203 | $41,007 | $41,827 | $42,663 | $43,517 | $44,387 |

[7] This appendix provides a good faith estimate of all rent due and unpaid under the Leases; the Debtors intend seek all monies due under the Leases, including monies in excess of the amounts set forth herein, and reserve all rights to do so.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4084 | $36,883 | $37,621 | $38,373 | $39,141 | $39,923 | $40,722 | $41,536 | $42,367 | $43,214 | $44,079 |
| 4085 | $40,025 | $40,826 | $41,642 | $42,475 | $43,324 | $44,191 | $45,075 | $45,976 | $46,896 | $47,834 |
| 4088 | $29,895 | $30,493 | $31,103 | $31,725 | $32,359 | $33,006 | $33,667 | $34,340 | $35,027 | $35,727 |
| 4089 | $3,100 | $3,162 | $3,225 | $3,290 | $3,356 | $3,423 | $3,491 | $3,561 | $3,632 | $3,705 |
| 4090 | $28,805 | $29,381 | $29,969 | $30,568 | $31,179 | $31,803 | $32,439 | $33,088 | $33,750 | $34,425 |
| 4091 | $11,875 | $12,113 | $12,355 | $12,602 | $12,854 | $13,111 | $13,373 | $13,641 | $13,913 | $14,192 |
| 4092 | $7,150 | $7,293 | $7,439 | $7,588 | $7,739 | $7,894 | $8,052 | $8,213 | $8,377 | $8,545 |
| 4093 | $80,008 | $81,608 | $83,240 | $84,905 | $86,603 | $88,335 | $90,102 | $91,904 | $93,742 | $95,617 |
| 4095 | $29,790 | $30,386 | $30,994 | $31,613 | $32,246 | $32,891 | $33,548 | $34,219 | $34,904 | $35,602 |
| 4097 | $51,289 | $52,315 | $53,361 | $54,428 | $55,517 | $56,627 | $57,760 | $58,915 | $60,093 | $61,295 |
| 4111 | $68,218 | $69,582 | $70,974 | $72,393 | $73,841 | $75,318 | $76,825 | $78,361 | $79,928 | $81,527 |
| 4064 | $27,968 | $28,527 | $29,098 | $29,680 | $30,273 | $30,879 | $31,497 | $32,126 | $32,769 | $33,424 |
| 4065 | $15,797 | $16,113 | $16,435 | $16,764 | $17,099 | $17,441 | $17,790 | $18,146 | $18,509 | $18,879 |
| 4068 | $38,895 | $39,673 | $40,466 | $41,276 | $42,101 | $42,943 | $43,802 | $44,678 | $45,572 | $46,483 |
| 4070 | $28,848 | $29,425 | $30,013 | $30,614 | $31,226 | $31,851 | $32,488 | $33,137 | $33,800 | $34,476 |
| 4072 | $29,733 | $30,328 | $30,934 | $31,553 | $32,184 | $32,828 | $33,484 | $34,154 | $34,837 | $35,534 |
| 4086 | $41,611 | $42,443 | $43,292 | $44,158 | $45,041 | $45,942 | $46,861 | $47,798 | $48,754 | $49,729 |
| 4087 | $15,477 | $15,787 | $16,102 | $16,424 | $16,753 | $17,088 | $17,430 | $17,778 | $18,134 | $18,496 |
| Total m. base rent obl.: | $990,645 | $1,010,458 | $1,030,667 | $1,051,280 | $1,072,306 | $1,093,752 | $1,115,627 | $1,137,940 | $1,160,699 | $1,183,912 |
| M. rem. for term year: x | 9 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 |
| Total yearly base rent | $8,915,805 | $12,125,495 | $12,368,005 | $12,615,365 | $12,867,672 | $13,125,026 | $13,387,526 | $13,655,277 | $13,928,382 | $14,206,950 |

23

| obligation: | |
|---|---|
| **Total acc. Rent:** | **$127,195,501** |

24